## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
|  |  |
| DANIMER SCIENTIFIC, INC., et al., | Case No. 25–10518 (MFW) |
|  | (Jointly Administered) |
| Debtors.[1] |  |
|  | **Obj. Deadline: May 5, 2025, at 4:00 p.m. ET** |
|  | **Hearing Date: May 12, 2025, at 3:00 p.m. ET** |

## KANEKA CORPORATION'S MOTION
## TO MODIFY THE AUTOMATIC STAY TO COMMENCE LITIGATION
## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

Creditor Kaneka Corporation ("Kaneka"), by and through its undersigned counsel, hereby moves (the "Motion") this Honorable Court for the entry of an order in the form attached hereto as **Exhibit A,** modifying or annulling the automatic stay imposed by 11 U.S.C. § 362, to the extent applicable, solely to permit Kaneka to file a lawsuit (the "Infringement Action") in the United States District Court for the District of Delaware based on pre- and post-petition acts constituting patent infringement by Danimer Scientific Inc., including its predecessors, successors, and/or affiliates (collectively, "Danimer" or the "Debtor"). In support thereof, Kaneka respectfully states as follows:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 1134(b) and 157(a) and (b).

---

[1] The Debtors in these Chapter 11 Cases and the last four digits of their respective federal tax identification numbers are: Danimer Scientific, Inc. (4518); Danimer Bioplastics, Inc. (8734); Danimer Scientific Holdings, LLC (8521); Danimer Scientific Kentucky, Inc. (6371); Danimer Scientific Manufacturing, Inc. (0322); Danimer Scientific, L.L.C. (7346); Meredian Bioplastics, Inc. (5822); Meredian Holdings Group, Inc. (7239); Meredian, Inc. (7507); and Novomer, Inc. (4173). The location of the Debtors' corporate headquarters is: 140 Industrial Boulevard, Bainbridge, Georgia, 39817.

2.      This is a core proceeding arising under 11 U.S.C. § 101 *et seq.* (as amended and applicable hereto, the "Bankruptcy Code") pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (G).

3.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory predicate for the relief requested herein is Section 362(d) of the Bankruptcy Code; Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and Rule 4001-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

5.      Pursuant to Local Rule 7008-1, Kaneka hereby consents to the entry of a final order or judgment by this Court relating to the Motion.

## PRELIMINARY STATEMENT

6.      Kaneka is a leading producer of biodegradable polymer produced by a microorganism biosynthesis process, in which plant oils are used as a primary raw material.  The polymer can be used for various plastic applications, such as straws, shopping bags, cutlery and food packaging and therefore contributes to the achievement of eco-friendly environment.  Kaneka has obtained certain Patents (hereinafter defined) with respect to the resins and processes used in the foregoing products.

7.      Danimer is a producer of polyhydroxyalkanoate ("PHA"), a key biodegradable ingredient in a wide range of engineered materials that are plastics alternatives.  Danimer sells and utilizes PHA under the proprietary "Nodax®" brand name for use in a wide variety of plastic applications including straws, food containers, and cutlery, among other things which infringe on Kaneka's Patents.

8.      Danimer is offering for sale and has (at least previously if not on a continuing basis) used, manufactured, offered for sale and sold, in the US, certain PHA compounds including its

Nodax® resins for use in biodegradable drinking straws. These compounds made by Danimer and from Danimer's resin products are covered by Kaneka's Patents as well as numerous of their dependent claims.  Danimer has been and continues to infringe at least two of Kaneka's Patents by virtue of these business activities.

9.      Danimer was recently put on notice of its infringement of Kaneka's Patents by way of Kaneka's Proof of Claim No. 36 as well as its recently filed *Kaneka Corporation's Limited Objection and Reservation of Rights to Debtors' Proposed Sale Transactions of Substantially All 363 Sale Assets* [Dkt. No. 215] (the "Limited Objection").  Due to the expedited nature of Danimer's bankruptcy proceeding, no resolution was reached as of this filing.  As such, and in an abundance of caution, Kaneka is compelled to file this Motion to pursue and preserve all remedies available to it to protect its Patents.  Kaneka seeks to commence the Infringement Action to both liquidate its claims and seek related relief.

10.     As a practical matter, the claims asserted by Kaneka in the Infringement Action will need to be liquidated prior to consideration of any plan of liquidation.  Further, the prompt liquidation of Kaneka's claims in the U.S. District Court will expedite administration of the bankruptcy estate and act to conserve the resources of this Court.

11.     For these reasons, as well as those outlined below, sufficient "cause" exists to grant relief from the stay under section 362(d)(1) to allow Kaneka to commence and prosecute the Infringement Action against Danimer through entry of a judgment, if any, with no execution thereof until further order of this Court.

**RELEVANT BACKGROUND**

A.     **The Parties**

        i.   **Kaneka**

12.     Kaneka is a Japanese Corporation with an office at 1-12-32, Aksaka, Minato-Ku, Tokyo, Japan, and a head office at 2-3-18, Nakanoshima, Kita-Ku, Osaka, Japan.

13.     Kaneka is an international company that produces a number of different products at plants around the world.  For more than 76 years, Kaneka has been engaged in the business of producing chemical products such as functional resin, foam resin, synthetic fibers, and other products.

14.     Kaneka focuses on creating products that can solve the world's three major crises (environment and energy, food, and wellness) on a global scale through its technology and ideas. To that end, Kaneka has built a family of patents and service marks in the United States in order to combine cutting-edge technologies with its own proprietary technologies.  As of 2022, Kaneka held over 3,354 Japanese Patents and over 3,379 patents throughout the rest of the world.

15.     Starting in 2011, Kaneka began producing the trademarked Kaneka Biodegradable Polymer Green Planet ("PHBH"), which is a biodegradable alternative to traditional plastics in products such as straws, shopping bags, cutlery and food packaging.  Kaneka significantly increased its production capacity for PHBH in 2022.   Through extensive and continuous use, Kaneka owns numerous trademark registrations (and common-law variations) related to PHBH.

        ii.  **Danimer**

16.     Danimer is a performance-polymer company specializing in bioplastic replacements for traditional petroleum-based plastics.  As noted above, Danimer is a producer of PHA, a key biodegradable ingredient in a wide range of engineered materials that are plastics

alternatives.  Danimer sells and utilizes PHA under the proprietary "Nodax®" brand name for use in a wide variety of plastic applications including straws, food containers, and cutlery, among other things (the "Accused Products").  Danimer also produces proprietary biopolymers using a natural plastic called polylactic acid ("PLA") as a base resin.  According to the *Declaration of Frank A. Pometti in Support of the Chapter 11 cases and First-Day Motions* [Dkt. No. 15], the Debtors primarily operate out of their Winchester, Kentucky facility, which has a total plant capacity of up to 55 million pounds of Nodax-based (PHA) finished products per year and has a PLA reactive extrusion facility in Bainbridge, Georgia with a total PLA-based resin capacity of up to 25 million pounds per year.

### B.    The Bankruptcy Case

17.    On March 18, 2025 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Bankruptcy Cases").  Each Debtor continues to operate their business and manage their properties as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

18.    On March 27, 2025, the Debtor filed the *Motion of Debtors for Entry of Orders (A) Approving (I) Bidding Procedures, (II) Certain Bid Protections in Connection with a Stalking Horse Agreement, if any, (III) Form and Manner of Notice of Sale Auction, and Sale Hearing, and (IV) Assumption and Assignment Procedures; (B) Scheduling Auction, Sale Hearing, and Related Deadlines;  (C) Approving (I) Sale of Substantially All of Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, And (II) Assumption and Assignment of Executory Contracts and Unexpired Leases; and (D) Granting Related Relief* [D.I. 93] (the "Bidding Procedures Motion").

19.     The Court granted the Bidding Procedures Motion on April 17, 2025, setting the Sale Objection deadline for May 7, 2025.

20.     On April 22, 2025, Kaneka filed its Limited Objection in which it acknowledged the need to quickly and efficiently liquidate the Debtors' assets to maximize value, but objected on a very limited basis to any potential sale to the extent such a sale presumed to strip Kaneka of its intellectual property rights and ability to assert infringement claims against purchasers of Danimer's assets subject to such claims.

### C.     Kaneka's Patents

21.     Kaneka's United States Patent No. 9,475,934 (the "934 Patent") entitled "Polyester Resin Composition and Molded Article Containing this Resin Composition" was duly issued on October 25, 2016 and remains unexpired.  A true and correct copy of the 934 Patent is attached as **Exhibit B** and is owned by Kaneka.

22.     Kaneka's United States Patent No. 10,030,117 (the "117 Patent" and together with the 934 Patent, the "Patents") titled "Aliphatic Polyester Resin Composition and Aliphatic Polyester Resin Molded Article" was duly issued on July 24, 2018 and remains unexpired.  A true and correct copy of the 117 Patent is attached as **Exhibit C** and is owned by Kaneka.

### D.     The Infringing Activity and Claims

23.     Danimer has infringed, both directly and literally, multiple claims of each of the Patents and continues to infringe, directly, indirectly, and/or through agents or intermediaries by making, using, offering for sale and/or selling the Accused Products in the United States.

24.     Specifically, Danimer is offering for sale and has (at least previously if not on a continuing basis) used, manufactured, offered for sale and sold, in the US, certain PHA compounds including its Nodax® resins for use in biodegradable drinking straws. These compounds made by

Danimer and from Danimer's resin products are covered by independent claim 1 of the '934 Patent and independent claims 1 and 13 of the '117 Patent, as well as numerous of their dependent claims. Accordingly, Danimer has been and continues to infringe at least the '934 and '117 Patents by virtue of these business activities.

25.     Danimer's infringement has caused, is causing, and will continue to cause Kaneka to suffer damage throughout the pendency of these Bankruptcy Cases.

## **RELIEF REQUESTED**

26.     Kaneka respectfully requests that the Court enter an order modifying the automatic stay to permit initiation of the Infringement Action and related proceedings, if any, with Kaneka returning to this Court for further disposition of any judgments received therein.

## **BASIS FOR RELIEF**

**A.     Sufficient Cause Exists to Modify the Stay and Permit the Infringement Action to be filed.**

27.     Relief from the automatic stay is warranted under section 362(d) in this instance. Specifically, section 362(d)(1) provides, in relevant part:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
>
> (1) for cause….

11 U.S.C. § 362(d)(1).

28.     The moving party bears the burden of demonstrating that cause exists to warrant relief from the stay. *In re Aleris Int'l, Inc.*, 456 B.R. 35, 47 (Bankr. D. Del. 2011).

29.     In determining whether cause exists, courts must consider "the totality of the circumstances in each particular case." *Baldino v. Wilson (In re Wilson)*, 116 F.3d 87, 90 (3d Cir.

1997). "To establish cause, the party seeking relief from the stay must show that 'balance of hardships from not obtaining relief tips significantly in [its] favor.'" *Atl. Marine, Inc. v. Am. Classic Voyages, Co. (In re Am. Classic Voyages, Co.)*, 298 B.R. 222, 225 (Bankr. D. Del. 2003) (quoting *In re FRG*, 115 B.R. 72, 74 (Bankr. E.D. Pa. 1990)). Courts in this district apply a hardship balancing test to assess the existence of "cause." *See In re The SCO Group, Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007) (finding "cause" existed to modify the automatic stay to permit pending litigation to commence); *see also In re Cont'l Airlines, Inc.*, 152 B.R. 420, 424 (Bankr. D. Del. 1993). The three prongs of the balancing test are: (1) whether any great prejudice to either the bankrupt estate or the debtor will result from lifting the stay; (2) whether the hardship to the non-bankrupt party by the maintenance of the stay considerably outweighs the hardship to the debtor if the stay is lifted; and (3) whether it is probable that the [movant] will prevail on the merits of its case against the debtor. *See, e.g., In re Downey Fin. Corp.*, 428 B.R. 595, 609 (Bankr. D. Del. 2010); *In re Cont'l Airlines*, 152 B.R. at 424; *In re Rexene Prod. Co*., 141 B.R. 574, 576 (Bankr. D. Del. 1992).

> **i. Permitting the Infringement Action to be filed will not result in any great prejudice to the bankruptcy estate or to Danimer.**

30.     While the Infringement Action will have a connection to Danimer's bankruptcy case, as Danimer is the primary defendant and any resulting judgment will be a claim against Danimer's bankruptcy estate, the commencement and prosecution of the Infringement Action will not interfere with its bankruptcy case. Kaneka's claims will need to be liquidated, either by the U.S. District Court or by this Court by way of an adversary proceeding or other contested matter. Therefore, granting relief to Kaneka to pursue liquidation of such claims would not interfere with the Bankruptcy Cases.

31.     Moreover, the U.S. District Court for the District of Delaware's experience in handling patent litigation will expedite the resolution of the Infringement Action.  A quick resolution of this unavoidable Infringement Action will inure to the benefit of the Debtor and its creditors through the quick liquidation of Kaneka's claims.

### ii.   The Hardship to Kaneka by Maintaining the Stay Considerably Outweighs the Hardship to Danimer.

32.     Kaneka will face substantial hardship if the stay is not lifted, whereas the prejudice to Danimer in granting relief will be slight.  *Rexene*, 141 B.R. at 576.  Kaneka continues to suffer economic damages from Danimer's infringement of their Patents.  Continuation of the stay would prevent Kaneka from commencing and prosecuting the Infringement Action and cause Kaneka to sustain additional economic injury and for Kaneka to remain uncompensated for its injuries.[2]

33.     By contrast, the Debtors will not suffer any meaningful hardship if the Infringement Action is allowed to proceed. The claims in the Infringement Action are patent infringement claims, which should not present any factual or legal issues that will impact or distract the Debtor from the liquidation process, and, in fact, will need to be resolved as part of such process.

### iii.   Kaneka has a High Probability of Prevailing on the Merits.

34.     When a party seeks relief from the automatic stay, the required showing for the movant's probability of success is "very slight." *In re Rexene Products*, 141 B.R. at 578; *see also In re Continental Airlines, Inc.*, 152 B.R. 420, 426 (D. Del. 1993) ("Even a slight probability on the merits may be sufficient to support lifting an automatic stay in an appropriate case.").  It

---

[2] To the extent that the Section 363 sale pursued by the Debtor pursuant to the Bidding Procedures Order does not result in a meaningful distribution to general unsecured creditors beyond what was negotiated in the *Final Order Authorizing the Debtors to Obtain Postpetition Senior Secured Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief*, Kaneka may determine, for purposes of judicial economy to both Kaneka and the Debtors' estates, not to pursue the Infringement Action and forgo recovery on such claims.

"merely requires a showing that [the movant's] claim is not frivolous." *Levitz Furniture Inc. v. T. Rowe Price Recovery Fund L.P. (In re Levitz)*, 267 B.R. 516, 523 (Bankr. D. Del. 2000).

35.     As detailed in the draft Complaint attached hereto as **Exhibit D**, Kaneka's probability of success in pursuing its claim on the merits is greater than "very slight."  Kaneka has sufficiently pleaded all elements of Danimer's patent infringements. There can be no dispute that Kaneka's probability of success passes muster under the equitable balancing test.

36.     The Danimer resin products at issue are used in biodegradable drinking straws and have been chemically analyzed and compared to the claims of Kaneka's Patents. As a result of this analysis, Kaneka identified numerous of its Patent claims that clearly and explicitly cover the Danimer resin products.

**B.     The Automatic Stay Does not Apply to Post-Petition Infringement.**

37.     While Kaneka acknowledges that section 362 prohibits any action that could have been filed prior to the petition date, the same does not necessarily apply to post-petition causes of action.

38.     Section 28 U.S.C. § 959 provides that post-petition patent infringement claims are not barred by the automatic stay and can be brought against a debtor—like Danimer. *See  In re Telegroup, Inc.*, 237 B.R. 87, (Bankr. D.N.J. 1999); *In re Television Studio School of New York*, 77 B.R. 411 (Bankr. S.D.N.Y. 1987).

**i.     Pre- and Post-Petition Patent Infringement Claims are Separate and Distinct**

39.     It remains an open question within the Third Circuit whether Section 362(a) applies to post-petition infringement claims when the debtor has also infringed on others' intellectual property.  As discussed below, some courts take the view the post-petition infringement as separate

and distinct from the prepetition infringement, while other courts treat the infringement as a single continuous act.

40.    Courts adopting the view that pre- and post-petition patent infringements are separate actions sometimes rely on 28 U.S.C. § 959(a), finding that it is an exception to the automatic stay.  This is because the automatic bankruptcy stay "protects interests in a debtor's property, not tortious uses of that property by the debtor."  *Dominic's Rest. Of Dayton, Inc. v. Mantia*, 683 F.3d 757, 760 (6th Cir. 2012).  *See also Larami Ltd. v. Yes! Entertainment Corp.*, 244 B.R. 56, 58–59 (D. N.J. 2000) (holding that plaintiff's cause of action for patent infringement arose post-petition and § 362(a)(3) does not bar plaintiff from seeking damages before the court); *Seiko Epson Corp. v. Nu-Kote Int'l, Inc.*, 190 F.3d 1360, 1364 (Fed. Cir. 1999) (holding that bankruptcy did not preclude an injunction against a debtor in a patent infringement suit); *Voice Sys. & Servs., Inc. v. VMX, Inc.*, 1992 WL 510121, at *10 (N.D. Okla. 1992); *Bambu Sales, Inc. v. Sultana Crackers, Inc.*, 683 F. Supp. 899, 916–17 (E.D.N.Y. 1988) (automatic stay not applicable to claim for injunctive relief on trademark infringement case); *In re Tel. Studio Sch. of New York*, 77 B.R. 411, 412 (Bankr. S.D.N.Y. 1987) ("The post-petition infringement claim, by definition, is not protected by 11 U.S.C. § 362").

41.    In *Voice Systems and Services, Inc. v. VMX, Inc.*, 1992 WL 510121, at *10 (N.D. Okla. 1992), the court held that the injunctive relief sought by the patent holder does not violate the automatic stay that was in effect in the debtor's chapter 11 bankruptcy proceeding.  As relevant, there, the *Voice Systems* court relied on 28 U.S.C. § 959(a) which provides as follows:

> (a) Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property. Such actions shall be subject to the general equity power of such court so far as the same may be necessary to the ends of justice, but this shall not deprive a litigant of his right to trial by jury.

42.    The rationale of 28 U.S.C. § 959(a) is that debtors are responsible for their ongoing post-petition conduct and must comply with applicable laws in the conduct of their business. The *Voice Systems* court noted specifically that 28 U.S.C. § 959(a) "has been held to constitute an exception to the section 362 automatic stay."

43.    In contrast, other courts have held that infringement beginning pre-petition and continuing post-petition is one perpetual wrong and the pursuit of these claims are precluded by Section 362(a)(1) of the Bankruptcy Code because such action could have been commenced prepetition.  Of note are the holdings in *In re Spansion, Inc.*, 418 B.R. 84 (Bankr. D. Del. 2009), which was later vacated on other grounds, and  *In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litigation*, 140 B.R. 969 (N.D. Ill. 1992).  However each case is distinguishable on the facts and in contrast to the findings of other courts, including the holdings of the Federal Circuit, which state that each instance of a patent infringement creates a new cause of action.  *See Hazelquist v. Guchi Moochie Tackle Co., Inc.*, 437 F.3d 1178, 1180-81 (Fed. Cir. 2006) (holding that acts of patent infringement occurring after a bankruptcy each "gives rise to a cause of action that dates from the moment of infringement, after the discharge of [the defendant's] debts"); *E.I. du Pont de Nemours & Co. v. MacDermid Printing Solutions, L.L.C.*, 525 F.3d 1353, 1362 (Fed. Cir. 2008) (recognizing that "each act of infringement gives rise to a separate cause of action" with regard to whether the infringement arose before or after a certificate of correction was issued).

44.    While the Third Circuit has rendered no ruling on this issue, this Court should adopt view that the post-petition infringement as entirely distinct from the prepetition infringement and permit Kaneka to commence the Infringement Action in the U.S. District Court for the District of Delaware.

## RESERVATION OF RIGHTS

45.    Kaneka reserves the ability to supplement this Motion as facts develop and to amend it filed Proof of Claim and to assert any claim, defense, or counterclaim available under the United States Constitution, to amend the draft Complaint to add additional parties and allegations and to otherwise assert any federal statutory law, federal common law, applicable state statutory or state common law or equity claims.  Furthermore, Kaneka reserves all rights as set forth in footnote 3 hereof.

## NO PRIOR REQUEST

46.    No prior application or motion for relief requested herein has been made to this or any other court.

**WHEREFORE**, for all the foregoing reasons and for cause shown, Kaneka respectfully requests that the Court enter an order modifying the automatic stay under section 362(a) in such a manner as to allow Kaneka to commence and prosecute the Infringement Action to judgment in the Delaware District Court and grant such further relief as this Court deems just and proper.

Dated:  April 24, 2025                                 Respectfully submitted,

                                                                     **McCARTER & ENGLISH, LLP**


                                                                     /s/ *Kate R. Buck, Esq.*
                                                                     Kate Roggio Buck, Esq. (DE 5140)
                                                                     Chelsea A. Botsch, Esq. (DE 6715)
                                                                     405 North King Street, 8th Floor
                                                                     Wilmington, DE 19801
                                                                     kbuck@mccarter.com
                                                                     cbotsch@mccarter.com


                                                                     **SQUIRE PATTON BOGGS (US) LLP**
                                                                     Christopher J. Giaimo, Esq. (*Pro Hac Vice Application Forthcoming*)
                                                                     2550 M Street, NW
                                                                     Washington, DC 20037

Telephone: (202) 457-6461
Christopher.giaimo@squirepb.com

*Counsel for Kaneka Corporation*